IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF COLORADO

Civil Action No. 1:13-CV-00506-CMA

**JOEL RICHARDSON, Individually and On Behalf of All Others Similarly Situated**,

       Plaintiff,

v.

**ANHEUSER-BUSCH COMPANIES, LLC**,

       Defendant.

---

**MOTION TO DISMISS BY ANHEUSER-BUSCH COMPANIES, LLC PURSUANT TO FED. R. CIV. P. 12(B)(6) AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO DISMISS**

---

The defendant Anheuser-Busch Companies, LLC by their counsel of record move to Dismiss pursuant to Fed. R. Civ. P. 12(b)(6) the First claim for relief for Violations of the Colorado Consumer Protection Act, Colo. Rev. Stat. § § 6-1-101 *et seq*., Second claim for relief for Breach of Implied Warranty of Merchantability, Colo. Rev. Stat. Ann. § 4-2-314 and Third claim for relief for Violations of Magnusson-Moss Warranty Act, 15 U.S.C.A. § 2301. *et seq*. on the grounds fully articulated in the memorandum brief set forth below.

**I.      INTRODUCTION**

The federal government has declared in regulations that the actual alcohol content of a beer may vary from the alcohol content on its label by up to as 0.3% under or over the stated alcohol by volume ("ABV").  27 C.F.R. § 7.71(c).  Colorado law similarly requires beer sold in

the state to bear a label approved pursuant to the federal standard.  1 CCR 203-2, Regulation 47-904(F) & (G).  Thus, a beer labeled as having 5% ABV may contain between 4.7% and 5.3% ABV and still comply with Colorado and federal law.  This is the legally allowable variance for beer ABV that applies to the entire brewing industry.

Plaintiff has dubbed this legally allowable variance "consumer fraud" and is trying to make a federal case out of it.  Plaintiff singled out Anheuser-Busch Companies, LLC ("Anheuser-Busch"), claiming that because certain of its malt beverages may have as much as 0.3% less ABV than the amount stated on the label, Anheuser-Busch breached the implied warranty of merchantability under the Uniform Commercial Code and engaged in deceptive trade practices.  Notably, this is the same beer that the Plaintiff pleads that he bought and consumed without complaint for at least four years.  Compl. ¶ 6.

Plaintiff alleges that Anheuser-Busch: (1) violated the Colorado Consumer Protection Act (Colo. Rev. Stat. §§ 6-1-101 *et seq.*) ("CCPA"); (2) breached the implied warranty of merchantability under Colorado law (C.R.S. 4-2-314); and breached the implied warranty of merchantability under the Magnusson-Moss Warranty Act (15 U.S.C. § 2301 *et seq.*) ("MMWA").  The latter claim for relief under the MMWA is predicated upon, and utterly dependent upon, the legal viability of the second claim for relief – breach of the implied warranty of merchantability under Colorado law.

All of these claims for relief should be dismissed for four reasons.  *First,* the CCPA includes an express regulatory compliance exemption providing that the act does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local government agency."  Col. Rev. Stat. §6-1-106(a).  Colorado and federal regulations explicitly authorize malt beverage manufacturers to state alcohol content on product labels, and

expressly permit that ABV level to vary within a tolerance of 0.3%, either above or below, the ABV percentage stated on the product label.  The Complaint fails even to advise the Court of this regulatory scheme for the labeling of ABV on malt beverages, let alone allege any violation of the relevant provisions.  Instead, the Complaint makes vague and conclusory allegations that Anheuser-Busch "deliberately mislabels," or "shaves" the alcohol content of its products such that it "uniformly" overstates alcohol content on product labels.  However, the Complaint fails to allege that any product was outside the 0.3% ABV tolerance expressly permitted by the law.  The claim for breach of the CCPA must therefore be dismissed because Plaintiff fails to allege a violation of the regulations governing statements of ABV content on malt beverage labels in Colorado.

*Second,* Plaintiff's claims for breach of the implied warranty of merchantability and violation of the CCPA should be dismissed because basic interpretive principles require the scope of these general statutes to be construed in harmony with the more specific Colorado and federal regulations that expressly permit a 0.3% tolerance from the ABV percentage found on the product label.  Compliance with such Colorado and federal labeling requirements, and the failure of the Complaint to allege anything to the contrary, means that the Complaint fails to state a claim for breach of the implied warranty of merchantability and breach of the CCPA.  Further, as Plaintiff's MMWA claim is entirely dependent upon the viability of the implied warranty of merchantability claim, this claim suffers from the same fatal defects and must therefore be dismissed.

*Third,* the Complaint's allegations are too vague and conclusory to plausibly allege the elements of causation or injury absent any factual allegations regarding the amount by which the alcohol content is allegedly overstated.

*Fourth*, if Plaintiff did not buy it, he cannot sue over it.  Thus, he lacks standing to sue for most of the brands mentioned in the Complaint.  He also lacks standing to seek injunctive and declaratory relief because Plaintiff pled that he no longer buys Anheuser-Busch products.

## II.   BACKGROUND

### A.   Federal Regulations Govern Statements Of Alcohol Content On Malt Beverage Labels

Federal law provides a comprehensive regulatory scheme that governs statements of alcohol content on malt beverage labels.  The federal standard provides that a tolerance of 0.3% is permitted in regards to statements of alcohol content.  27 C.F.R. § 7.71(c).

The Federal Alcohol Administration Act was "designed as a comprehensive statute to deal with practices within the alcohol beverage industry that Congress had judged to be unfair and deceptive."  *Adolph Coors Co. v. Bradly*, 944 F.2d 1543, 1547 (10th Cir. 1991).  In enacting the Act, Congress placed particular importance on the inclusion of affirmative provisions regulating product labels.  *Brown-Forman Distillers Corp. v. Mathews*, 435 F. Supp. 5, 10 (W.D. Ky. 1976) (*citing* H.R. Rep. No. 1542, 74th Cong. 1st Sess. at 3 (1935)).

In order to enforce the statutory scheme, Congress created the Alcohol and Tobacco Tax and Trade Bureau ("TTB") and authorized its Administrator to "prescribe such rules and regulations as may be necessary to carry out his powers and duties."  27 U.S.C. § 202(d).  In regards to labeling, Congress directed the TTB to issue regulations "(1) as will prohibit deception of the consumer with respect to such products or the quantity thereof and as will prohibit, irrespective of falsity, such statements relating to age, manufacturing processes, analyses, guarantees, and scientific or irrelevant matters as the Administrator finds to be likely to

mislead the consumer; (2) as will provide the consumer with adequate information as to the identity and quality of the products, [and] the alcoholic content thereof."   27 U.S.C. § 205(f).

The TTB, in turn, has promulgated an extensive number of rules and regulations governing the sale and distribution of alcoholic beverages.  TTB regulations prohibit any label statement "that is false or untrue in any particular, or that, irrespective of falsity, directly, or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression."  27 C.F.R. § 7.29(a)(1).  TTB regulations also prohibit any "representation of or relating to analyses, standards, or tests, irrespective of falsity, which the appropriate TTB officer finds to be likely to mislead the consumer."  27 C.F.R. § 7.29(a)(4).

The TTB regulations specifically permit alcohol content to be "stated on a label unless prohibited by State law."  27 C.F.R. § 7.71(a).  Where "the manner of statement is not required under State law, it shall be . . . expressed to the nearest one-tenth of a percent, subject to the tolerance . . . of 0.3% [that] will be permitted, either above or below the stated percentage of alcohol."  27 C.F.R. § 7.71(a), (b)(2) & (c)(1).

**B.**      **Colorado Law Follows The Federal Standard And Permits Use Of Any Label Approved By The TTB Pursuant To That Standard**

The Colorado Liquor Code (the "Code") is "deemed an exercise of the police powers of the state for the protection of the economic and social welfare and the health, peace, and morals of the people of this state."  Col. Rev. Stat. Ann. §12-47-102(1).  The General Assembly authorizes the manufacture and sale of alcoholic beverages "subject to the terms, conditions, limitations, and restrictions" therein.  Col. Rev. Stat. Ann. §12-47-102(2).

To this end, the Department of Revenue Liquor and Tobacco Enforcement Division (the "Division") was created "[f]or the purpose of regulating and controlling the licensing of the

manufacture, distribution, and sale of alcohol beverages in this state." Col. Rev. Stat. Ann. §12-47-201(1). The Division is specifically empowered to issue rules and regulations governing "[m]isrepresentation, unfair practices, and unfair competition" and "[s]tandards of purity and labeling." Col. Rev. Stat. Ann. §12-47-201(1)(G) & (N).

Pursuant to its grant of authority, the state licensing authority has promulgated regulations, including requiring that any beer sold in Colorado have been approved by the TTB pursuant to its regulatory standards:

> F. The manufacturer or importer of any alcohol beverage product sold in Colorado must register said product with the Liquor Enforcement Division prior to the date of the product's initial intended date of sale. Alcohol beverages sold in Colorado must have first obtained either a "Certificate of Label Approval" or a "Certificate of Exemption" from the Alcohol and Tobacco Tax and Trade Bureau ("TTB").

> G. The manufacturer or importer of alcohol beverage products that have obtained a TTB "Certificate of Exemption" are required upon request to certify that their product's label will comply with TTB labeling criteria as found in the "Federal Alcohol Administration Act" 27 CFR Subchapter A - Liquor Part 4, Subpart D; Part 5, Subpart D; and Part 7, Subpart C.

1 CCR 203-2, Regulation 47-904. Colorado does not prohibit statements of alcohol content on product labels or require a specific manner of statement that varies from the federal standard – instead, the Code and the regulations promulgated thereunder permit the use of labels that are approved by the TTB pursuant to the federal standard and tolerance of 0.3%.

Accordingly, the entity charged with enforcing Colorado law governing product labels and protecting the public from deception already has effectively determined that alcohol labeling that complies with the legally allowed variance under federal law is not deceptive and is permitted as a matter of law

C.    **Allegations Of The Complaint**

The fact section of the Complaint consists of a total of nine paragraphs.  Plaintiff alleges that he regularly purchased AB products including Budweiser, Bud Light Lime, Bud Light Platinum, Michelob Ultra and Natural Ice, during the past four years at various retailers in Colorado. Compl. ¶ 6.  Plaintiff alleges that Budweiser states on its packaging an alcohol content of 5% and that the Bud Light Lime packaging states an alcohol content of 4.2%.  *Id.*  Plaintiff alleges that Bud Light Platinum states on its packaging an alcohol content of 6%, Michelob Ultra an alcohol content of 4.2% and that the Natural Ice packaging states an alcohol content of 5.9%. *Id.*  Plaintiff alleges that he "took AB's stated percentage of alcohol into account in making his purchases and would not have purchased" any of the 4.2%, 5%, 5.9% or 6% ABV beers if he knew the actual alcohol content was lower than stated on the packaging.  *Id.*  Although Plaintiff claims to have only purchased Budweiser, Bud Light Lime, Bud Light Platinum, Michelob Ultra and Natural Ice, he is attempting to represent a class of "[a]ll consumers who purchased any one of eleven products from a retail location in Colorado.  *Id*. ¶ 17.

Plaintiff does not claim to have tested the alcohol content of any of the malt beverages that he purchased.  Plaintiff alleges that after buying the products, he has "since learned that these claims of alcohol content were in each case overstated."  *Id.* ¶ 6.

Plaintiff does not allege that Anheuser-Busch products have an alcohol content that is more than 0.3% below the percentage of alcohol stated on the label.  Plaintiff does not specify or quantify how much "less alcohol" Anheuser-Busch's products had as compared to what was stated on the label.  *Id.* ¶ 8.  Rather, Plaintiff alleges that "AB waters down its products, 'shaving' the total alcohol content to well below the percentages stated on their labels."  *Id.* ¶ 14.

Plaintiff also alleges that the "alcohol content is consistently lower than the level it promises on its labels." *Id.*

## III.   <u>LEGAL STANDARD</u>

A court must dismiss any claim under Federal Rule of Civil Procedure 12(b)(6) where the plaintiff has failed to articulate a cognizable legal theory or failed to plead facts sufficient to support a cognizable legal claim.  The Tenth Circuit and this Court have recognized that the Supreme Court "recently retired" the notice pleading standard and "prescribed a new inquiry for courts to use in reviewing a dismissal: whether the complaint contains enough facts to state a claim to relief that is plausible on its face." *Ivar v. Elk River Partners, LLC*, 705 F.Supp.2d 1220, 1227 (D.Colo., 2010) (Arguello J.) (quoting *Ridge at Red Hawk, L.L.C. v. Schneider,* 493 F.3d 1174, 1177 (10th Cir.2007) (*Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)) (alterations omitted).  "The Court explained that a plaintiff must nudge his claims across the line from conceivable to plausible in order to survive a motion to dismiss." *Id.* (*quoting Twombly*, 550 U.S. at 570) (alterations omitted). "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complaint must give the court reason to believe that this plaintiff has a reasonable likelihood of mustering factual support for these claims." *Id.*

In evaluating a complaint's factual basis, a court must accept the truth of only well-pleaded facts:

> [A] pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does the complaint suffice if it tenders naked assertions devoid of further factual enhancement. Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief.

*Id.* (*quoting Iqbal*, 556 US at 680-81) (alterations omitted).

In addition, Plaintiff's CCPA claims require him to satisfy the heightened pleading requirements of Rule 9(b).  *Hansen v. Auto-Owners Ins. Co*., 2010 U.S. Dist. LEXIS 25431, 2010 WL 749820, at *2 (D. Colo. Mar. 4, 2010) (*citing Duran v. Clover Club Foods Co*. 616 F. Supp. 790, 793 (D. Colo. 1985)).  Rule 9(b) requires Plaintiff to allege facts with "particularity" and "set forth the time, place and contents of the false representation, the identity of the party making the false statements and the consequences thereof."  *Koch v. Koch Industries, Inc*., 203 F.3d 1202, 1236 (10th Cir. 2000); *Two Moms & a Toy, LLC v. Int'l Playthings*, LLC, 2012 U.S. Dist. LEXIS 141362, *16-18 (D. Colo. Sept. 30, 2012).

**IV.    PLAINTIFF'S CCPA CLAIM SHOULD BE DISMISSED BECAUSE IT FAILS TO ALLEGE VIOLATIONS OF THE COLORADO LIQUOR CODE OR FEDERAL REGULATIONS REGARDING STATEMENTS OF ALCOHOL CONTENT ON MALT BEVERAGE LABELS**

Plaintiff's CCPA claim should be dismissed because compliance with other laws insulates a defendant from liability, and Plaintiff does not allege that Anheuser-Busch failed to comply with the Code or federal regulations governing malt beverage labels.  The CCPA includes an express regulatory compliance exemption providing that the act does not apply to "[c]onduct in compliance with the orders or rules of, or a statute administered by, a federal, state, or local government agency."  Col. Rev. Stat. §6-1-106(a).  Pursuant to "the well-established principle of statutory construction that all words be given their commonly accepted and understood meaning," the Colorado Supreme Court has stated that "the plain meaning of [§6-1-106(a)] is that conduct *in compliance* with other laws will not give rise to a cause of action under [the CCPA]."  *Showpiece Homes Corp. v. Assurance Co. of Am.*, 38 P.3d 47, 56 (Colo. 2001) (emphasis original).

Beer cannot be sold in Colorado unless the manufacturer has obtained a "Certificate of Label Approval" from the TTB.  1 CCR 203-2, Regulation 47-904.  As part of its comprehensive regulatory scheme for approving labels, TTB regulations are designed to "prohibit deception of the consumer" and "provide the consumer with adequate information as to the identity and quality of the products, [and] the alcoholic content thereof."   27 U.S.C. § 205(f); *also* 27 C.F.R. § 7.29(a)(1) & (a)(4).  In approving a beer label for use, the TTB permits as a matter of law a 0.3% deviation above or below the alcohol content stated on the label.  27 C.F.R. § 7.71(a), (b)(2) & (c)(1).

Where a particular subject matter is permitted by a specific statutory scheme (as here under the Federal Alcohol Administration Act and applicable federal and state regulations), Colorado courts have required plaintiffs to allege a violation of that scheme to maintain a CCPA claim.  In other words, a plaintiff cannot maintain a CCPA claim where defendant's conduct complied with other laws and did not violate the specific statutory scheme.

In *Showpiece Homes*, the Colorado Supreme Court held that conduct which complied with other laws could not be actionable under the CCPA.  The court explained the purpose of the CCPA statutory exemption as follows:

> The purpose of the exemption is to insure that a business is not subjected to a lawsuit under the Act when it does something required by law, or does something that would otherwise be a violation of the Act, but which is allowed under other statutes or regulations.  It is intended to avoid conflict between laws . . .

Showpiece Homes Corp., 38 P.3d at 56.

The court in *Showpiece Homes* also noted that "it is helpful to examine other states' interpretations of their consumer protection statutes," many of which have "constru[ed] a similar statutory exemption."  *Id*. at 54 & 56.  In that respect, the reasoning of a very recent unpublished

decision of the United States Court of Appeals for the Eleventh Circuit is instructive.  *Kuenzig v. Hormel Foods Corp*., 2013 U.S. App. LEXIS 2265, *3-6 (11th Cir. Feb. 1, 2013).  In *Kuenzig*, as here, the plaintiff alleged that defendant breached the implied warranty of merchantability and committed deceptive trade practices by mislabeling a food product.  *Id*. at *1-4.  The deceptive trade practice claim in *Kuenzig* was brought under the Florida Deceptive and Unfair Trade Practices Act ("FDUTPA"), which contains a statutory exemption similar to Colorado for conduct that is "specifically permitted by federal or state law."  *See* Fla. Stat. § 501.212(1).  In *Kuenzig*, as here, the defendant's labels were approved by a federal regulatory agency prior to their use and plaintiff did not allege that the label violated the applicable regulatory provisions. In *Kuenzig*, the Eleventh Circuit affirmed the district court's dismissal of the complaint:

> [P]ursuant to its safe harbor provision, the FDUTPA does not apply to acts specifically permitted by federal law. Defendants' labels were specifically permitted by federal law. The labels complied with federal regulations regarding the use of percentage fat-free claims and were approved by FSIS [Food Safety and Inspection Service] prior to their commercial use. Accordingly, Kraft and Hormel could not be liable pursuant to the FDUTPA's safe harbor provision.

*Id*. at *5.

This Court should dismiss Plaintiff's CCPA cause of action because he does not allege that Anheuser-Busch violated any of the statutory or regulatory provisions governing labeling of malt beverages.  Plaintiff does not even disclose the existence of the Code, let alone the detailed regulation of beer labeling.  Pursuant to *Showpiece Homes*, the more specific regulation trumps the CCPA because the state and federal regulators have determined that a tolerance of 0.3% ABV is acceptable under the law.

To the extent that Plaintiff argues that the label must contain additional information specifying precisely the alcohol content of each bottle of beer, this is inconsistent with the

purpose of the statutory exemption in ensuring that "a business is not subjected to a lawsuit under the Act when it does something . . . allowed under other statutes or regulations." *Showpiece Homes Corp.*, 38 P.3d at 56.  Second guessing the legal standards for malt beverage labels is inconsistent with the legislative policy of deference granted to regulatory agencies.  It is clear from *Showpiece Homes* that regulated actors need to be able to rely on the directions received from such agencies without risk that such reliance may expose them to tort liability.  *Id.*  The regulations permit a 0.3% deviation above or below the alcohol content stated on the label.  As in *Kuenzig*, the consumer protection claims should dismissed because Plaintiff fails to allege that Anheuser-Busch's conduct violated the regulations governing beer labels.  Because Plaintiff cannot allege a violation of the regulations, he cannot allege any CCPA claim at all.

**V.     PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE HE DOES NOT ALLEGE VIOLATIONS OF THE COLORADO LIQUOR CODE OR FEDERAL REGULATIONS REGARDING STATEMENTS OF ALCOHOL CONTENT ON BEER LABELS**

**A.     Plaintiff's Implied Warranty of Merchantability And MMWA Claims Should Be Dismissed Absent Allegations That Anheuser-Busch Violated The 0.3% Tolerance**

Plaintiff's implied warranty claims should also be dismissed because he cannot allege a cognizable claim absent allegations that Anheuser-Busch violated the Code or federal regulations governing malt beverage labels.  Plaintiff's claim for breach of the implied warranty is based solely on the requirement of Colorado law that products must "conform to the promises or affirmations of fact made on the container or label, if any."  Compl. ¶ 28; Col. Rev. Stat. Ann. §4-2-314(2)(f).  Plaintiff's theory appears to be that Anheuser-Busch is required to list the precise alcohol content of each bottle of beer.  Compl. ¶¶ 13, 15.  Thus, the question of law for the Court, in the first instance, is to determine the meaning of the word "conform" and, in

particular, whether the term permits no tolerance whatsoever, as appears to be Plaintiff's theory. As a practical matter, it is obvious that there must be some tolerance because absolute accuracy would, in theory, require precision to an infinite number of decimal places.  The question therefore becomes what is the appropriate *level* of tolerance.

Interpretive principles strongly support interpreting the word "conform" in Section 4-2-314(2)(f), as applied to malt beverages, to include the 0.3% tolerance in 27 C.F.R. § 7.71. Colorado law provides that Uniform Commercial Code provisions are supplemented by other legal provisions.  Col. Rev. Stat. Ann. §4-1-103.  Indeed, the commentary to Colorado's incorporation of the UCC states that "interpretive principles addressing the interrelationship between statutes may lead the court to conclude that the other statute is controlling, even though it conflicts with the Uniform Commercial Code."  Col. Rev. Stat. Ann. §4-1-103, cmt. 3.  Such would be the result, the comment continues, where "the other statute was specifically intended to provide additional protection to a class of individuals engaging in transactions covered by the Uniform Commercial Code."  *Id.*  Here, the federal regulation, which has been adopted by state regulation, should supplement and control interpretation of the UCC provisions because the regulation is specifically intended to permit 0.3% variance from the alcohol content stated on the label.

A statute should be construed to be in harmony with other law that is *in pari materia*. *Ascot Dinner Theatre, LTD. v. Small Business Admin.*, 887 F.2d 1024, 1029 (10th Cir. 1989) (construing 15 U.S.C. § 634(b) *in pari materia* with regulations promulgated pursuant to 28 U.S.C. §§ 2679 and 2680).  Construing Section 4-2-314(2)(f) to be in harmony with 27 C.F.R. § 7.71 is particularly appropriate because of the specificity of Section 7.71 and the fact that this section specifically concerns the labeling of malt beverages.  As the Tenth Circuit

observed in *U.S. v. Shewmaker*, 936 F.2d 1124, 1128 (10th Cir. 1991), "[w]hen general and specific statutory provisions apparently contradict, it is well-established that the two may exist together, the specific provision qualifying or limiting the general" because "it is preferable to harmonize apparently conflicting statutes, so as to give effect to both."  Indeed, this principle is codified under Colorado state law as it relates to Colorado statutes.  Col. Rev. Stat. Ann. §2-4-205.

The word "conform" in Section 2.314 should therefore be construed, consistently with Section 7.71, to include a tolerance of 0.3%.   Accordingly, Plaintiff should not be permitted to state any claim for the product's failing to conform to the label unless he alleges that it violated the tolerance provided under the labeling provisions of the regulatory scheme. *Brod v. Sioux Honey Ass'n*, 2013 U.S. Dist. LEXIS 27081, *55-56 (N.D. Cal. Feb. 27, 2013) (holding that where plaintiff failed to allege that label violated state "Code's food labeling and content disclosure provisions," implied warranty claim was subject to dismissal because "[o]n these facts, the Court cannot conclude that [the product] … does not 'conform to the promises or affirmations of fact made on the container or label.'").

Further, to the extent that any implied warranty in the abstract could be construed to require the product to conform exactly to the representation of alcohol content on the label, such an implied warranty is "excluded or modified" by the "course of performance or usage of trade." C.R.S. 4-2-316(c).  Federal law provides that a 0.3% tolerance is permitted.  27 C.F.R. § 7.71(c). Colorado law provides that beer manufacturers who comply with the federal standard can sell beer in Colorado.  1 CCR 203-2, Regulation 47-904.  These provisions establish a "course of performance" or "usage of trade" as a matter of law that excludes or modifies any implied

warranty that the alcohol content of the product must conform exactly to the statement on the label.

As discussed above, Plaintiff does not allege that Anheuser-Busch violated the 0.3% tolerance permitted under Colorado and federal law.  For this reason, Plaintiff fails to state any claim that the product does not conform to the statement of alcohol content on the label. Because Plaintiff's MMWA claim for relief is cognizable only if Plaintiff plausibly alleges a claim for breach of the implied warranty, both claims for relief should be dismissed.  15 U.S.C. § 2301(7), 2310(d)(1)(B)

### B.   Plaintiff's CCPA Claim Should Be Dismissed Absent Allegations That Anheuser-Busch Violated The 0.3% Tolerance

For the reasons discussed above, Plaintiff's CCPA claim should also be dismissed because he cannot allege a cognizable claim of deceptive conduct absent allegations that Anheuser-Busch violated the 0.3% tolerance.  Plaintiff's claim for breach of the CCPA is based on the requirement that prohibits (1) knowingly making a false representation as to the characteristics, ingredients, uses, benefits, alterations, or quantities of goods, food, services, or property, or (2) representing that goods, food, services, or property are of a particular standard, quality, or grade, if he knows or should know that they are of another.  Compl. ¶ 31 (citing Colo. Rev. Stat. § 6-1-105(1)(e) & (g)).[1]  Both these provisions require plausible allegations that Anheuser-Busch made a false statement.  *See*, e.g., *Palm v. Rock Bottom Rests., Inc.*, 2012 U.S. Dist. LEXIS 87182, *12 (D. Minn. June 25, 2012) (granting motion to dismiss because both provisions require plaintiff to allege that defendant made "an affirmatively false statement.").

---

[1] Plaintiff's complaint cites to Colo. Rev. Stat. § 6-1-105(1)(b) & (g), but quotes the text of Colo. Rev. Stat. § 6-1-105(1)(e) & (g).  Compl. ¶ 31.  It is unclear whether Plaintiff's claim is premised on subsection (b) or (e).

The question of law for the Court, in the first instance, is to determine whether there is no tolerance whatsoever in regards to representations of alcohol content on beer labels, as appears to be Plaintiff's theory, or whether the appropriate level of tolerance is the 0.3% permitted by law. For the reasons discussed above, the provisions of the CCPA should be construed to include a tolerance of 0.3%. Plaintiff's claim should be dismissed because he does not allege that Anheuser-Busch violated the 0.3% tolerance permitted under Colorado and federal law and, therefore, does not allege any actionable false statement.

**VI.**  **PLAINTIFF'S CLAIMS SHOULD BE DISMISSED BECAUSE THE COMPLAINT'S VAGUE ALLEGATIONS AND LEGAL CONCLUSIONS ARE INADEQUATE UNDER IQBAL**

A valid claim under the CCPA consists of the following elements: "(1) that the defendant engaged in an unfair or deceptive trade practice; (2) that the challenged practice occurred in the course of defendant's business, vocation, or occupation; (3) that it significantly impacts the public as actual or potential consumers of the defendant's goods, services, or property; (4) that the plaintiff suffered injury in fact to a legally protected interest; and (5) that the challenged practice caused the plaintiff's injury." *Rhino Linings USA, Inc. v. Rocky Mountain Rhino Lining, Inc.*, 62 P.3d 142, 146-47 (Colo. 2003).

To state a claim for breach of the implied warranty of merchantability, Plaintiff must allege facts that plausibly demonstrate that: (1) The defendant sold the product; (2) The plaintiff is a person who was reasonably expected to use, consume or be affected by the product; (3) The defendant was a merchant with respect to the type of product involved; (4) The product was not of merchantable quality at the time of sale; (5) This breach of warranty caused the plaintiff damages; and (6) Within a reasonable time after the plaintiff discovered or should have discovered the alleged breach of warranty, the plaintiff notified the defendant of such breach.

Colorado Jury Instructions for Civil Trials ("CJI-Civ") 14:10.  Plaintiff claims that the beer he purchased was unmerchantable because it did not "conform to the promises and affirmations of fact made on the container or label."  Colo. Rev. Stat. § 4-2-314(2)(f); Compl. ¶ 38.

**A.**   **Plaintiff Fails To Allege Sufficient Evidentiary Facts To Support A Plausible Claim Of Causation On Any Claim For Relief**

Plaintiff fails to allege plausible allegations of causation.  Plaintiff's claim for breach of the implied warranty under Colorado law must be dismissed absent allegations that the breach proximately caused injury.  *See* Colorado Jury Instructions for Civil Trials 14:10.  Under the CCPA, the plaintiff must allege causation and reliance.  *Garcia v. Medved Chevrolet, Inc.*, 263 P.3d 92, 98-100 (Colo. 2011); Colo. Rev. Stat. § 6-1-113(1).

Plaintiff's Complaint does not contain plausible allegations of causation or reliance because of its vagueness regarding the amount by which the alcohol content was allegedly overstated on the label.  The Complaint contains conclusions and formulaic recitations that are not entitled to a presumption of truth on a motion to dismiss.  *See Iqbal*, 556 U.S. at 681 (conclusory allegations are not "entitled to the assumption of truth").  Plaintiff claims that Anheuser-Busch's products were "deliberately misrepresented," failed to conform to the alcohol content promised "on its labels," and are "watered down."  Compl. ¶¶ 8, 12, 21.  Plaintiff alleges that Anheuser-Busch "intentionally misrepresents each such product as having a greater amount of alcohol than it actually contains," and "intentionally and falsely overstates the alcohol content of its malt beverages."  Compl. ¶¶ 1, 15.  Such conclusions and recitations add nothing to Plaintiff's cause of action and must be disregarded.  *Twombly*, 550 U.S. at 555.

The only specific facts alleged by Plaintiff are that Anheuser-Busch uses technology known as Anton Paar meters to measure the alcohol content of its products.  Compl. ¶¶ 13-15.

But it is not enough to state specific facts – they must amount to a claim for relief.  *Iqbal*, 556 U.S. at 682-83.  Anheuser-Busch's use of technology to monitor alcohol content is consistent with lawful business activity.  *Twombly*, 550 U.S. at 557.

Plaintiff does not allege that he personally tested the alcohol content of Anheuser-Busch's products, and does not identify ***any*** testing results supporting his allegation that the products are "deliberately mislabeled."  Plaintiff's allegations in regards to the level of alleged alcohol dilution are vague, conclusory, and contradictory.  Plaintiff alleges that the alcohol content is "well below" and "consistently lower" than stated on the label, but simultaneously and contradictorily implies that any reduction in alcohol content is minor by claiming that Anheuser-Busch is "shaving" the alcohol content.  *See*, e.g., Compl., ¶ 14.

Plaintiff alleges that he "took AB's stated percentage of alcohol into account in making his purchases, and would not have purchased AB's malt beverages had he known that AB's representations were false."  Compl. ¶ 6.  But it is not credible for Plaintiff to contend that he would not have bought the malt beverages without also pleading that the alcohol content was overstated by a meaningful amount.  *See*, e.g., *Elk River Partners,* 705 F.Supp.2d at 1227 (court should not accept "naked assertions devoid of further factual enhancement.").  This is particularly true because Plaintiff claims that he purchased beers ranging from 4.2% ABV to 6% ABV.  Compl. ¶ 6.  Plaintiff's own purchasing decisions render implausible his allegations that knowing the truth about minor variations in alcohol content would have caused him not to purchase the beers that he has been purchasing and consuming for years.

Finally, Plaintiff also asserts claims for many products that he did not buy, but does not allege any facts to support his assertion that these other products contain labels that overstate the actual alcohol content of the beer, or make any allegations of causation or reliance in regards to

these products.  Compl., ¶¶ 6-8.  Plaintiff's conclusory allegations about brands that he never

bought are insufficient to state a claim under *Iqbal*.

     **B.**     **Plaintiff Fails To Allege Sufficient Evidentiary Facts To Support A Plausible Claim Of Injury On Any Claim For Relief**

     The Court should also dismiss all of Plaintiff's claims because they do not contain

plausible allegations of injury.  To bring a claim in federal court, a plaintiff must satisfy the

Article III Constitutional standing requirements.  *Arizona Christian School Tuition* Organization

*v. Winn*, 131 S. Ct. 1436, 1442 (2011) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-

61 (1992)).  "[T]he irreducible constitutional minimum of standing" requires a plaintiff to

demonstrate (1) an injury in fact; (2) causation; and (3) redressability.  *Id.* (citing *Lujan*, 504 U.S.

at 560-61). With respect to the first requirement, the plaintiff must establish an injury that is

actual or imminent and concrete and particularized, not conjectural or hypothetical.")  *Id.*

     In his Complaint, Plaintiff alleges only economic injuries.  Plaintiff's sole allegation of

injury to himself is that he "purchased malt beverages that had less value than what he paid, and

has accordingly suffered legally cognizable damages proximately caused by Defendant's

misconduct."  Compl. ¶¶ 6, 15.

     In dismissing similar claims in connection with allegations of food or beverage

mislabeling, numerous courts have held that vague allegations that a product had "less value" are

insufficient to establish the requisite concrete and particularized injury.  *See*, e.g., *Veal v. Citrus

World, Inc*., 2013 U.S. Dist. LEXIS 2620, *11-13 (N.D. Al. Jan. 8, 2013) (holding that plaintiff

had not sufficiently alleged injury by claiming that he "purchased products he would not have

purchased or (2) paid more than [he] otherwise would have been willing to pay if the product

was not mislabeled.").  For purposes of demonstrating actual injury, Plaintiff's allegations fail

because he "does not allege how much he personally paid for [the malt beverage], how much this amount was over what he was willing to pay for it," or that he would have bought a cheaper beer if he knew the truth. *Id*. at *13 n. 5; *Frye v. L'Oreal USA, Inc*., 583 F. Supp. 2d 954, 958 (N.D. Ill. 2008) (holding that allegations that plaintiff would not have bought the specific product at issue if she knew the truth were insufficient to confer standing because she did not allege that she could have purchased a cheaper product from another seller).

Because Plaintiff does not identify the amount (if any) by which the alcohol content was below that stated on the label, his allegations of injury are conjectural and implausible. Plaintiff makes no attempt to provide a factual basis from which the value of his alleged loss could be quantified, and his failure to do so is fatal to the complaint. It is impossible to know whether the specific batches of beer that he bought contained lower alcohol content than was stated on the label. Plaintiff fails to allege that he could taste the allegedly lower alcohol content in his beer and fails to allege that the products he bought were tested to determine their alcohol content. Because Plaintiff has failed to allege facts sufficient to support a plausible claim that the beer he bought contained less alcohol, and has failed to allege how much less value the beer had than the amount he paid, the Court should dismiss all of Plaintiff's claims in the Complaint because his alleged damages are "too remote, too uncertain, or purely conjectural."

### C.      Plaintiff Fails To State A Claim Under The MMWA

As previously set forth, the MMWA does not provide a separate substantive cause of action; rather, it is totally derivative of state law. 15 U.S.C. § 2301(7) ("implied warranty means an implied warranty arising under State law"), 2310(d)(1)(B) (a consumer may bring a cause of action in an appropriate federal district court to recover damages caused by breach of an implied

warranty).  Because Plaintiff here has failed to state a breach of the implied warranty of

merchantability under Colorado law, he also has failed to state a claim for breach of the MMWA.

## VII.   PLAINTIFF LACKS STANDING

### A.   The Court Should Dismiss Plaintiff's Request For Injunctive And Declaratory Relief

The Court should dismiss Plaintiff's request for injunctive and declaratory relief.

Plaintiff lacks standing to seek injunctive and declaratory relief because he contends that he

learned the truth about Anheuser-Busch's alleged mislabeling and no longer purchases

Anheuser-Busch products.  Compl. ¶ 6.

A lawsuit seeking injunctive or declaratory relief cannot proceed unless Plaintiff can

show a "real or immediate threat that the plaintiff will be wronged again." *City of Los Angeles v.*

*Lyons*, 461 U.S. 95, 111 (1983); *Gest v. Bradbury*, 443 F.3d 1177, 1181 (9th Cir. 2006).

Plaintiff's allegations are insufficient on their face to establish an entitlement to declaratory or

injunctive relief because he has no stated intention of purchasing Anheuser-Busch products in

the future.  *See*, e.g., *Wal-Mart Stores, Inc. v. Dukes*, 131 S. Ct. 2541, 2559-60 (2011) (holding

where former employees had "no ... need for prospective relief," they had "no claim for

injunctive or declaratory relief at all."); *Ctr. for Biological Diversity, Inc. v. BP Am. Prod. Co*,

704 F.3d 413 (5th Cir. 2013) (holding that where there is no meaningful prospect of future

injury, "there can be no meaningful relief granted by an injunctive order.").

### B.   Plaintiff Lacks Standing For Claims Based On Products He Did Not Buy

Plaintiff alleges in the Complaint that the only Anheuser-Busch products that he bought

were Budweiser, Bud Light Lime, Bud Light Platinum, Michelob Ultra, and Natural Ice.  Compl.

¶ 6.  Plaintiff lacks standing to assert claims for alleged mislabeling of six other products listed in the Complaint that he never purchased.  *Id*. ¶ 8.

The Article III standing requirements apply equally to class actions.  *Smith v. Pizza Hut, Inc.*, 2011 U.S. Dist. LEXIS 76793 *26-30 (D. Colo. July 14, 2011) (holding that class action plaintiff lacked standing to bring claims under laws of states where he never lived nor resided).  The class representative must allege an individual, personal injury in order to seek relief on behalf of herself or any other member of the class.  *Id*.  Thus, even in the context of a class action, Plaintiff cannot establish standing by pointing to an injury that a defendant caused to a putative class member.  The Court should dismiss Plaintiff's claims regarding the eight Anheuser-Busch products that he did not buy.

## VIII.  <u>CONCLUSION</u>

For all the reasons stated above, this Court should dismiss all three of the claims for relief and dismiss the Complaint with prejudice.

Dated:  April 8, 2013                    Respectfully submitted,

*Original signature on file at the law firm of Wheeler Trigg O'Donnell LLP*

s/ John R. Trigg
John R. Trigg (#833)
N. Reid Neureiter (#29747)
Michele On-ja Choe (#43656)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:  303-244-1879
Email: trigg@wtotrial.com
         choe@wtotrial.com
         neureiter@wtotrial.com


s/ Marcus S. Topel
Marcus S. Topel
Daniel F. Cook
Brian P. Brosnahan
Jacob N. Foster
Kasowitz, Benson, Torres & Friedman LLP
101 California Street, Suite 2300
San Francisco, California 94111
Telephone: 415.655.4309
Facsimile:  415.520.0727
Email: mtopel@kasowitz.com
         dcook@kasowitz.com
         bbrosnahan@kasowitz.com
         jfoster@kasowitz.com

*Attorneys for Defendant*
*Anheuser-Busch Companies, LLC*

<u>**CERTIFICATE OF SERVICE (CM/ECF)**</u>

I hereby certify that on April 8, 2013, I electronically filed the foregoing with the Clerk

of Court using the CM/ECF system which will send notification of such filing to the following

email addresses:

- **Brian Paul Brosnahan**
  bbrosnahan@kasowitz.com

- **Michele On-Ja Choe**
  choe@wtotrial.com, hanson@wtotrial.com, sun@wtotrial.com

- **Daniel Frederick Cook**
  dcook@kasowitz.com

- **Jacob Nathaniel Foster**
  jfoster@kasowitz.com

- **Robert Wade Mills**
  rwm@millslawfirm.com, josh@millslawfirm.com, corey@millslawfirm.com,
  lorna@millslawfirm.com

- **N. Reid Neureiter**
  neureiter@wtotrial.com, hand@wtotrial.com

- **Marcus Sanders Topel**
  mtopel@kasowitz.com

- **John R. Trigg**
  trigg@wtotrial.com, allen@wtotrial.com, testa@wtotrial.com, schechter@wtotrial.com

*Original signature on file at the law firm of*
*Wheeler Trigg O'Donnell LLP*

*s/ John R. Trigg*
John R. Trigg (#833)
Wheeler Trigg O'Donnell LLP
370 Seventeenth Street, Suite 4500
Denver, CO  80202-5647
Telephone:  303.244.1800
Facsimile:   303-244-1879
Email:  trigg@wtotrial.com