**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 13-cv-00506-CMA-MEH

JOEL RICHARDSON, on behalf of
himself and all others similarly situated,

      Plaintiff,

v.

ANHEUSER-BUSCH COMPANIES, LLC,

      Defendant.

_____

**REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO STAY**
_____

# TABLE OF CONTENTS

I.    INTRODUCTION ................................................................................. 1

II.   ARGUMENT ...................................................................................... 3

   A. A Stay Will Conserve Judicial Resources .................................... 3

   B. AB Will Suffer No Prejudice As a Result of the Brief Stay Requested .... 4

   C. Plaintiff and His Counsel Will Suffer Prejudice ......................... 6

   D. To the Extent the Court Finds It Relevant to Prejudge the Outcome of
   the JPML's Ruling, Consolidation is Highly Likely ........................ 7

        i.   Each of the Related Cases Will Require Consideration of the
             Same   Federal Alcohol Labeling Standard ................................ 7

        ii.  Each of the Related Cases Implicate the Same Body of
             Authorities Regarding Manufacturing Tolerances ..................... 7

        iii. Each of the Related Cases Involves Identical Breach of
             Implied Warranty and Magnusson-Moss Warranty Act Claims . 9

III.  CONCLUSION ................................................................................. 10

# TABLE OF AUTHORITIES

**Cases**

*Deutsche Bank Trust Co. Americas v. Fushimi*,
  2011 WL 5864987 (D. Colo. Nov. 22, 2011) .................................................. 9
*F.O.I.C. v. Countrywide Fin. Corp.*,
  2011 WL 4372915 (D. Colo. Sept. 19,2011) ................................................ 13
*Franklin v. Merck & Co., Inc.*,
  2007 WL 188264 (D. Colo. Jan. 24, 2007) ................................................... 6
*Gonzalez v. Organon USA*,
  2013 WL 664551  (N.D. Cal. Feb. 22, 2013) ............................................... 6
*Lundy v. C.B. Fleet Co., Inc.*,
  2009 WL 1965521 (D. Colo. July 6, 2009) .................................................. 6
*Order Granting Stay,,*
  Case No. 3:13-cv-00917-M (Dkt. 32) ......................................................... 4
*Rivers v. Walt Disney Co.*,
  980 F. Supp. 1358 (C.D. Cal. 1997) ........................................................... 7
*See Smith v. Life Investors Ins Co. of Am.,,*
  U.S. Dist. LEXIS 42791 (W.D. Pa. May 29, 2008) ...................................... 7
*United States of America v. Anheuser-Busch INBEV SA/NV et al.,,*
  Case No. 1:13-cv-00127-RWR ................................................................... 7

**Statutes**

13 Pa. Cons. Stat. Ann. § 2314(2)(f) ............................................................. 13
3 Pa. Cons. Stat. Ann. § 4110 (West) ........................................................... 12
C.R.S.A. § 35-14-105 .................................................................................... 12
Cal. Bus. & Prof. Code § 12107 .................................................................... 12
Cal. Com. Code § 2314(2)(f) ......................................................................... 13
Colo Rev. Stat. Ann. § 4-2-314(2)(f) ............................................................. 13
N.J. Stat. Ann. § 12A:2-314........................................................................... 13
Oh. Rev. Code Ann. § 1302.27 ..................................................................... 13
Ohio Rev. Code Ann. § 1327.49 (West) ........................................................ 12
Tex. Agric. Code Ann. § 13.114 .................................................................... 12
Tex. Bus. & Com. Code Ann. § 2.314(b)(6)................................................... 13

**Regulations**

27 C.F.R § 7.29(a)(1) ..................................................................................... 11
58 FR 21228-01 ............................................................................................. 11

**Other Authorities**

Multidistrict Litigation Manual § 4:27 (2012 ed.) ............................................ 4
Multidistrict Litigation Manual § 5:40 (2012 ed.) ............................................ 6

## I. INTRODUCTION

The untimely opposition[1] of Defendant Anheuser-Busch Companies, LLC ("AB") fails to articulate any legitimate reason why this Court should sacrifice limited judicial resources, and the parties should spend needless time and money, during the few *short weeks* between this Court's decision on this motion and the Joint Panel on Multidistrict Litigation ("JPML") hearing on the Motion to Transfer, now set for May 30, 2013.[2]   Indeed, AB did not offer the JPML any reason why it opposes consolidation.[3]   After full briefing by the parties, the District Court for the Northern District of Texas rejected the identical arguments AB advances here, and stayed the related Texas action because of the "potential to conserve judicial resources" and after considering "the potential prejudice to the parties."[4]   Three other motions to stay are currently pending, and Plaintiff expects them to reach the same logical conclusion.[5]

While the primary factor courts consider in ruling on a motion to stay is "the preservation of judicial resources,"[6] AB contends that its public image in the press should trump any concern for the Court's resources, the burden on the Plaintiff and his counsel, or the significant risk of inconsistent rulings for these overlapping classes.   Not surprisingly, *AB does not cite any cases where a court declined to stay a case out of concern about publicity.*   Nor does AB explain how the inefficient, district-by-district alternative it proposes

---

[1] Plaintiff's Motion to Stay was filed on March 28, 2013, giving AB until April 18, 2013 in which to respond under Local Rule 7.1C.   Its Opposition was not filed until April 22, 2013.
[2] See *MDL 2448*, Dkt. 16.   "In most cases the Panel decides the matter before it within a short period after arguments are held . . ." Multidistrict Litigation Manual § 4:27 (2012 ed.).
[3] AB's Opposition is attached to the Supplemental Request for Judicial Notice ("Supp. RJN") as Exhibit B.
[4] See Order Granting Stay, Case No. 3:13-cv-00917-M (Dkt. 32), Supp. RJN, Exh. A.
[5] The Northern District of Ohio denied, *without any rationale*, a motion to stay that action on April 18, 2013, *without notice of the Texas stay, and without giving Plaintiff the opportunity to file a reply* - likely prompting a motion for reconsideration.   Case No. 1:13-cv-00413-DCN (Dkt. 15).
[6] See e.g. *Gonzalez v. Organon USA*, 2013 WL 664551 (N.D. Cal. Feb. 22, 2013).

it is a better solution than consolidation to its concerns about adverse publicity.  This is especially so since the gravamen of Plaintiff's allegations is that AB intentionally waters down its beers, allegations which AB has acknowledged as true in its recent filings, although it disputes the amount of dilution and the legal significance of its activity.[7]  In light of this, AB's unsubstantiated contention that it suffered prejudice from the truthful reporting of its business practices is illogical. AB may wish that those facts had not been made public – an understandable position – but that does not entitle AB to preferential treatment or have any bearing on the issues before the Court in this motion.  Further, since a stay has already been granted in the Northern District of Texas action, the ultimate outcome of this litigation must await a ruling by the JPML in any event.

Rather than focusing on the potential efficiencies and preservation of judicial resources, AB asks this Court not only to prejudge how the JPML will rule on the pending Motion to Transfer, (Opp., pp. 10-14), but also to assume that AB will prevail in its motion to dismiss the complaint (Opp., pp. 6-10), or that it will defeat any future motion for class certification. (See Opp., p. 11, describing its intended arguments against certification). This speculation is particularly inappropriate here where the JPML decision itself will be forthcoming in only a few weeks after this Court's ruling.  "The mere fact a party seeks to avoid transfer by the argument that there are legal issues to be raised by motion will face the probabl[e] conclusion that these matters can be raised before and decided by the

---

[7] AB admits that "there is no dispute that many of the products identified by Plaintiff do not have exactly the ABV stated on the label."  (Opp. at p. 11.)  In opposition to the motion for consolidation and transfer, AB admitted that the alcohol content of most of the products at issue is *lower* than, not just *different* from, the promises contained on the product labels. Supp. RJN, Exh. B, p. 8. That is *exactly* what the complaint in this action alleges.

transferee judge." Multidistrict Litigation Manual § 5:40 (2012 ed.).   In any event, AB's arguments against consolidation are unpersuasive.

## II. ARGUMENT

### A.    A Stay Will Conserve Judicial Resources

"When evaluating a motion to stay, a primary factor the court should consider is the preservation of judicial resources." *Gonzalez v. Organon USA, 2013 WL 664551 at *1 (N.D. Cal. Feb. 22, 2013)*, *Franklin v. Merck & Co., Inc.*, 2007 WL 188264, at *2 (D. Colo. Jan. 24, 2007) ("... granting a stay would promote judicial economy and help insure consistent pretrial rulings").  Accordingly, "[a]s a general rule, 'courts frequently grant stays pending a decision by the MOL panel regarding whether to transfer a case.'" *Lundy v. C.B. Fleet Co., Inc.*, 2009 WL 1965521, at *1 (D. Colo. July 6, 2009).  AB fails to give sufficient weight to the burden on this Court if this case is not stayed, including the resources involved with ruling on AB's comprehensive Motion to Dismiss, (Dkt. 18), or presiding over the Scheduling Conference (set for *two days before* the JMPL hearing).[8]

AB erroneously claims that no judicial resources will be wasted by pushing forward on its motion to dismiss because Plaintiff's claims are "dependent solely on state law," and should therefore be immediately adjudicated by a Colorado judge even if the JPML thereafter orders the cases consolidated and assigned to a judge from another district. This contention is not only incorrect, as discussed below, but it *directly contradicts what AB is simultaneously telling the JPML in opposition to the Motion to Transfer*, wherein it

---

[8] Dkt. 5.

repeatedly claims that "[t]hese cases all implicate the same federal regulation. . ."[9] There is little doubt that judicial resources will have been preserved by a stay if the JPML orders consolidation and transfer following its May 30, 2013 hearing. Other than its feeble "adverse publicity" point (addressed below), AB suggests no reason why this case is unusual, justifying departure from the practice of a "majority of courts" that have stayed pretrial proceedings during the short period while a motion pends before the JPML.[10]

### B.  AB Will Suffer No Prejudice As a Result of the Brief Stay Requested

AB's claim of prejudice rests on a number of faulty assumptions.  First, the "timely adjudication" of claims that AB seeks must necessarily await the determination by the JPML since the Texas action has already been stayed.  Accordingly, there is no prejudice in staying this action as well.  Next, AB claims that "even if the Motion to Consolidate was denied instantly, a stay would cause delay." (Opp., p. 15).  It is hard to imagine how the delay of a few weeks would constitute "prejudice" given AB's requested extensions of time in which to respond to the various complaints, including in this case.[11]  See *Smith v. Life Investors Ins Co. of Am.*, U.S. Dist. LEXIS 42791 (W.D. Pa. May 29, 2008) (the period of delay resulting from a stay is "relatively short, is easily measurable, and is directly tied to a tangible event" when a motion to transfer is filed with the JPML).

With respect to publicity, AB fails to mention that Plaintiff's counsel did not issue a single press release, nor did they initiate contact with a single member of the press, until

---

[9] Supp. RJN, Exh. B, p. 11.
[10] *Rivers v. Walt Disney Co.,* 980 F. Supp. 1358, 1362 (C.D. Cal. 1997).
[11] See Dkt. 10. AB also sought multiple delays in the pending federal antitrust litigation against it, despite the billions of dollars at stake. See *United States of America v. Anheuser-Busch INBEV SA/NV et al.*, Case No. 1:13-cv-00127-RWR, Dkts. 21, 23.

after they were first contacted by the media.[12]   At that time, both Plaintiff's counsel *and* AB's Vice President responded to media inquiries,[13] and AB issued multiple press releases.  AB also took to Twitter, "retweeting" press accounts it found favorable, while denouncing this litigation.[14]   AB's media strategy did not stop there.   After initial news reports died down, AB brought it back to life by taking out full-page advertisements in the Sunday edition of ten major newspapers, including the New York Times, mocking the cases filed against it, but failing to deny the factual allegations.[15] AB once again used social media to amplify the media coverage.[16] This publicity stunt generated extensive additional public and media interest,[17] the very thing it now bemoans as prejudicial.

AB also fails to mention that it is *solely* responsible for generating yet another wave of negative publicity when it chose to sue one of its former employees for blowing the whistle on the misconduct alleged in this complaint, and for his participation in this litigation.[18] AB is now facing an anti-SLAPP motion in that case,[19] to which AB responded with additional press releases and a public statement from one of its vice presidents.[20]

Most significantly, while AB asserts that publicity surrounding these allegations have sullied its reputation, it does not deny their truth. This case alleges that AB

---

[12] AB makes a number of false and unsupported allegations regarding Plaintiff's counsel, and its summary of statements should be disregarded as irrelevant.  See Second Supplemental Declaration of Robert W. Mills, ("2nd Supp. Mills Decl."), ¶ 2.

[13] See, e.g., http://anheuser-busch.com/index.php/anheuser-busch-statement-on-lawsuit/, which was reprinted in numerous articles.

[14] 2nd Supp. Mills Decl., ¶ 3, 6.

[15] 2nd Supp. Mills Decl., ¶ 4. See http://anheuser-busch.com/index.php/anheuser-busch-statement/.

[16] 2nd Supp. Mills Decl. ¶¶ 5-6. See https://twitter.com/Budweiser/status/308016447618174976.

[17] AB's advertising campaign was largely panned by the media because it completely side-stepped the issues presented in this case. 2nd Supp. Mills Decl. ¶ 5.

[18] See Supp. RJN, Exh. C.

[19] See Supp. RJN, Exh. D.

[20] See http://anheuser-busch.com/index.php/anheuser-busch-statement-on-lawsuit-2/. Plaintiff's counsel did not issue any statement about this matter. See 2nd Supp. Mills Decl., ¶ 9.

intentionally waters down its beers, and AB has now acknowledged that claim as true, although it disputes the amount of dilution and the legal significance thereof.   AB submits no support, either evidentiary or by argument, that a rapid legal declaration that it engaged in legal, rather than illegal, dilution is likely to improve its public image.

### C.  Plaintiff and His Counsel Will Suffer Prejudice

AB contends that there can be no prejudice to the Plaintiff since he filed this case and should be held to "establish their legal sufficiency."  Plaintiff will need to address the arguments raised in AB's motion to dismiss eventually, but it unreasonably discounts the *unnecessary* work resulting from its insistence on a quick resolution of that motion while the JPML considers consolidation, as well as the needless appearance at the Scheduling Conference (two days before the JPML hearing), and the risk of inconsistent rulings. "[T]he risk of inconsistent judgments and the interests of judicial economy will ordinarily outweigh any slight delay caused by a stay pending an MOL panel's ruling." *Deutsche Bank Trust Co. Americas v. Fushimi*, 2011 WL 5864987 (D. Colo. Nov. 22, 2011).

If consolidation is ordered, the transferee judge will presumably wish to consider an amended, consolidated complaint, rather than addressing overlapping arguments attacking each of the six existing complaints.  If so, any work done now preparing an opposition to AB's current motions to dismiss will be wasted.   Moreover, they will presumably be required to re-brief the motion to dismiss under the procedural rules of that district.  Given the short period between the hearing on this motion to stay and the JPML decision on consolidation and transfer, Plaintiff's concerns about wasted effort are surely entitled to at least as much weight as AB's unsupported speculation about possible

increased damage to the public perception about its products flowing from a short delay.

### D. To the Extent the Court Finds It Relevant To Prejudge the Outcome of the JPML's Ruling, Consolidation is Highly Likely

#### i. Each of the Related Cases Will Require Consideration of the Same Federal Alcohol Labeling Standard

AB argues that no conflicting rulings would be possible in this and the related cases because adjudication of each case will turn solely on application of the relevant state's particular alcohol regulations, thus purportedly making JPML consolidation unlikely. (Opp. p. 4).   This unsupported argument ignores the existence of uniform federal regulation which will be relevant to resolution of each of the state law claims, which AB *concedes* in its opposition to the motion to transfer.[21]   In arguing against a stay, AB also directly contradicts its own position stated to this Court in its Motion to Dismiss, wherein it likewise states that "The federal government has declared in regulations that the actual alcohol content of a beer may vary from the alcohol content on its label by up to as 0.3% under or over the stated alcohol by volume ("ABV")." (Dkt. 18, p. 1).   Since AB concedes that the federal regulation will need to be considered in each action, consolidation is likely here.

#### ii. Each of the Related Cases Implicate the Same Body of Authorities Regarding Manufacturing Tolerances

Individual adjudication of each of the related cases would require each district court judge to rule on the same federal labeling regulation, including the gloss on that regulation resulting from the same opinions and directives by the Alcohol and Tobacco Tax and

---

[21] "These cases all implicate the same federal regulation. . ." See Supp. RJN, Exh. B, p. 11.

Trade Bureau ("TTB"), and National Institute for Standards and Technology ("NIST"), both of which prohibit using tolerances to perpetrate fraud.

The TTB has made it clear that tolerances are intended "to provide for normal production and analytical variables while continuing to ensure that the labeling does not mislead the consumer." TTB Procedure 2004-1.[22]   Plaintiff contends that AB employs sophisticated testing and production equipment and process control technology that eliminates all "normal production and analytical variables" before adding superfluous water to its finished products, which it does purely for economic reasons, deliberately targeting the very bottom of the Section 7.71 tolerance.[23]

While AB now contends that ". . . agency opinions are not relevant as an interpretive matter unless a statute or regulation is ambiguous," (Opp., p. 10), it took a contrary position in its Motion to Dismiss, claiming that "[s]econd guessing the legal standards for malt beverage labels is inconsistent with the legislative policy of deference granted to regulatory agencies." (Dkt. 18, p. 12).  In the absence of consolidation, each of the six federal district court judges would be called upon the determination of how much weight, if any, to give to these same TTB rulings, making consolidation more appropriate.

---

[22] See Supp. RJN, Exh. E; 58 FR 21228-01 (The TTB further provided that "[t]his tolerance permits normal variations in the production of beer, ale, and so forth brought about by differences in raw materials and brewing practices."); and RJN Exh F: TTB Ruling 80-3 ((determining that the intent of tolerance ranges with respect to labeled statements of caloric, carbohydrate, protein, and fat contents for malt beverages, "is to provide for normal production and analytical variables while continuing to ensure that the labeling is not misleading to the consumer.")

[23] The FAAA further requires that alcohol "labeling and advertising provide adequate information to the consumer concerning the identity and quality of the product" to "prevent misleading labeling or advertising that may result in consumer deception regarding the product." Federal regulations also prohibit the labeling of beer beverages which contain "any statement that is false or untrue in any particular, or that, irrespective of falsity, directly or by ambiguity, omission, or inference, or by the addition of irrelevant, scientific or technical matter, tends to create a misleading impression." 27 C.F.R § 7.29(a)(1).

Like the TTB, the NIST also prohibits the deliberate manipulation of production facilities and equipment to take improper advantage of tolerances, as alleged in each of these complaints.  The stated goal of NIST Handbook 44, entitled "Specifications, Tolerances, and Other Technical Requirements for Weighing and Measuring Devices," is ". . . to eliminate from use, weights and measures and weighing and measuring devices . . . that facilitate the perpetration of fraud . . .."[24] Section 2.3 of the Handbook warns owners "not [to] take advantage of tolerances by deliberately adjusting their equipment to have a value, or to give performance, at or close to the tolerance limit."

Under Colorado law, producers like AB must adhere to NIST tolerance standards as a matter of law, since C.R.S.A. § 35-14-105 expressly incorporates NIST standards. Accordingly, by deliberately targeting the very bottom of the stated tolerance, while labeling its products at the highest limit, these tolerances are therefore not being used by AB as permitted by the FAAA and TTB, and as articulated by the NIST Manual, which has the force of Colorado law. Critically, each of the other states has also adopted NIST Handbook 44,[25] which likewise supports consolidation to a single transferee judge.

### iii. Each of the Related Cases Involves Identical Breach of Implied Warranty and Magnusson-Moss Warranty Act Claims.

In addition, each of the states at issue here has explicitly adopted the identical

---

[24] See NIST Handbook 44, available online at http://www.nist.gov/pml/wmd/pubs/upload/13-hb44-final-Web.pdf

[25] California: Cal. Bus. & Prof. Code § 12107; Pennsylvania: 3 Pa. Cons. Stat. Ann. § 4110 (West); New Jersey: N.J. Stat. Ann. § 51:1-61 and 41 N.J.R. 3095(a); Texas: Tex. Agric. Code Ann. § 13.114; Ohio: Ohio Rev. Code Ann. § 1327.49 (West).

Uniform Commercial Code provision,[26] which also serve as the bases for the violations of the federal Magnusson-Moss Warranty Act in all of the complaints.   Accordingly, AB's claims that each of these related cases involved "unique" issues of state law is simply incorrect, and plainly contradicted by the record in these cases.

## III. CONCLUSION

"Judicial resources would best be conserved by imposing a stay until the transfer issue is resolved so that, if the transfer is finalized, the JPML court can determine all pretrial matters in a coordinated manner." *F.O.I.C. v. Countrywide Fin. Corp.,* 2011 WL 4372915 (D. Colo. Sept. 19,2011). Given the circumstances presented – the short duration of the requested stay, the judicial resources saved, the possibility of inconsistent rulings, and the cost savings to all parties – Plaintiff respectfully requests that this Court stay these proceedings pending the determination by the JPML.

Dated: April 23, 2013                          Respectfully submitted,
                                               *Original signature on file at The Mills Law Firm*
                                               **THE MILLS LAW FIRM**
                                               By:  */s/ Robert W. Mills*
                                               Robert W. Mills (SBN 062154)
                                               880 Las Gallinas Avenue, Suite 2
                                               San Rafael, California 94903
                                               Telephone: (415) 455-1326
                                               Facsimile: (415) 455-1327
                                               E-Mail: Robert@millslawfirm.com

                                               *Attorney for Plaintiff Joel Richardson, and the*
                                               *Proposed Class*

---

[26] See Cal. Com. Code § 2314(2)(f); Colo. Rev. Stat. Ann. § 4-2-314(2)(f); N.J. Stat. Ann. § 12A:2-314; Oh. Rev. Code Ann. § 1302.27; 13 Pa. Cons. Stat. Ann. § 2314(2)(f); Tex. Bus. & Com. Code Ann. § 2.314(b)(6).